## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:11-CV-129

| | |
|---|---|
| **JOSEPH SAVITSKIE, individually and on behalf of all persons similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ZENTA MORTGAGE SERVICES, LLC,**<br><br>**Defendant.** | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)** |

Defendant, Zenta Mortgage Services, LLC, submits this Memorandum in opposition to Plaintiff Joseph Savitskie's Motion to Facilitate Notice Under 29 U.S.C. § 216(b) (Dkt. No. 16).

## INTRODUCTION

Plaintiff, in his haste to transform his lawsuit into a collective action, ignores the numerous differences between the members of the proposed class he seeks to represent. Notwithstanding Plaintiff's conclusory assertions to the contrary, the duties performed by the mortgage underwriters Zenta employs vary greatly depending on the particular bank (*i.e.*, "customer") for whom those underwriters work, the types of loans those underwriters review, as well as each underwriter's relative seniority, certifications, training, and position within his or her department. Thus, determining whether these underwriters qualify as exempt, salaried employees under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") will require numerous, individualized determinations concerning the duties each underwriter performed during his or her employment. Because Plaintiff and the members of his proposed class are not similarly situated with regard to the issues of law and fact relevant to their claims under the

FLSA, conditional certification of this suit as a collective action is inappropriate. Accordingly, this Court should decline Plaintiff's request to exercise its discretion to facilitate notice of this lawsuit in order to solicit additional plaintiffs. Facilitating such notice would only serve to join numerous, disparate claims together in an unwieldy lawsuit that should not be resolved on a class-wide basis.

**FACTS**

## I.   ZENTA'S OPERATIONS

Zenta provides outsourcing solutions for mortgage origination, servicing, and loss-mitigation to residential mortgage lenders and other financial institutions. (Declaration of Lynn Grich, ("Grich Decl."), ¶ 3, attached hereto as Exhibit A). The services Zenta provides include mortgage underwriting, which it performs for a number of different customers, not all of whom are mortgage lenders. (*Id.* ¶¶ 3, 12). Though Zenta provides these services on an outsourced basis to its customers, Zenta is neither a mortgage broker nor lender and is not in the business of selling loans. (*Id.* ¶ 3).

Plaintiff and the four individuals who signed consents to join this action (the "Potential Opt-in Plaintiffs")[1] are former Zenta employees who worked as mortgage underwriters for one of Zenta's customers during various times between August 2010 and March 2011 in its offices in Charlotte, North Carolina. (Declaration of Joseph Savitskie ("Savitskie Decl.") ¶ 2; Declaration of Antoinette Gross ¶ 2; Declaration of Lyle David Harrison ¶ 2; Declaration of Angela Mack ¶ 2; Declaration of Randall Neal Spivey ¶ 2). In his Complaint, Plaintiff contends that he and the members of the proposed class were "misclassified" as exempt, salaried employees under the

---

[1]    The four Potential Opt-in Plaintiffs have each signed an "Opt-In Consent Form," stating their intention to join in this lawsuit if it is certified as a collective action, which Plaintiff has filed with the Court attached to "Notice[s] of Filing Consents to Join Collective Action" (Dkt. Nos. 3, 6, 13).

2

FLSA, and thus should have been paid overtime compensation for hours worked in excess of 40 hours per week. (Compl. ¶ 2). Collectively, Plaintiff and the Potential Opt-in Plaintiffs assert that, notwithstanding the various differences in the duties and responsibilities of Zenta's mortgage underwriters, they are nevertheless similarly situated to all other mortgage underwriters employed by Zenta between March 14, 2008 to the present. (P.'s Mem. Supp. Mot. to Facilitate Notice ("P.'s Mem.") 3 (Dkt. No. 17)).

## II. VARIATIONS AMONG THE DUTIES AND RESPONSIBILITIES OF ZENTA'S MORTGAGE UNDERWRITERS

Zenta uses the term "mortgage underwriter" to describe employees who provide a number of different services for its customers. (Grich Decl. ¶ 4). The duties of individual mortgage underwriters vary depending on a number of factors, including: (i) the customer for whom the underwriter works; (ii) the customer's particular credit policies and lending guidelines; (iii) the types of loans with which the underwriter works; and (iv) the seniority, credit authority, and certifications of the underwriter. (*Id.* ¶4). Indeed, because Zenta is a provider of outsourcing services, Zenta's customers—not Zenta—largely determine the duties and responsibilities of its mortgage underwriters. (*Id.* ¶ 9).

Mortgage underwriters serve an important function for Zenta's customers by analyzing loan applications to assess (i) whether the risk of providing a loan is acceptable to the lender under the lender's credit policies and (ii) if the loan meets standards for resale on the secondary mortgage market. (*Id.* ¶¶ 4, 11). To make that determination, a mortgage underwriter must thoroughly analyze information regarding the potential borrower's income, assets, investments, debts, credit history, and the value of the collateral provided by the borrower. (*Id.* ¶ 5). Then, after such analysis, the underwriter makes a decision whether the loan should be approved or declined. (*Id.*) The underwriter also is required to assess whether other loan products offered by

3

the lender would better meet the potential borrower's needs. (*Id.*) If some other loan product offered by the lender better suits the potential borrower's needs, the underwriter is responsible for suggesting an alternative. (*Id.*)

Though underwriters consult guidelines and tools to help them in their decision-making process, each borrower's financial situation is different, and underwriters must exercise significant judgment and discretion in order to make sound decisions regarding the creditworthiness of potential borrowers. (*Id.*) The lending guidelines that customers provide cannot cover every situation an underwriter encounters. (*Id.*) Instead, the underwriting guidelines provide *guidance* as to how to analyze the information in a loan application, and such analysis requires an underwriter to interpret the applicable guidelines and to decide how they apply to financial information in the loan application. (*Id.*) In fact, many underwriters develop their own processes for reviewing loan applications and create their own rubrics for identifying and analyzing information contained in a loan file. (*Id.* ¶ 19). Given the innumerable different situations a mortgage underwriter may encounter, as well as a mortgage underwriter's relative autonomy in performing his work, the time an underwriter spends on any given task varies from underwriter to underwriter. (*Id.*)

## A. The Duties Mortgage Underwriters Perform Vary Based on The Customer for Whom They Work

Zenta divides its mortgage underwriters into separate departments assigned to each of its underwriting customers. (*Id.* ¶ 6). Since it was formed in June 2009, Zenta has employed mortgage underwriters in departments assigned to (i) Citibank, N.A. ("Citibank"); (ii) PHH Corporation ("PHH"); (iii) United Services Automobile Association ("USAA"); and (iv) United Guaranty Services, Inc. ("United Guaranty"). (*Id.*) Because Zenta provides mortgage

underwriting services to these customers on an outsourced basis, the duties and responsibilities of Zenta's mortgage underwriters vary from customer to customer.

In particular, the nature of the work Zenta's mortgage underwriters perform depends on the terms of each customer's separately-negotiated service agreement with Zenta. (*Id.* ¶ 8). Thus, Zenta's customers play a significant role in determining the particular duties and responsibilities of the mortgage underwriters Zenta employs. (*Id.* ¶ 9). When a customer enters a contract with Zenta, it provides Zenta a job description that defines an underwriter's duties and responsibilities, which Zenta then uses to recruit and hire underwriters for that customer's department. (*Id.*) Moreover, once those underwriters are hired, the customer—not Zenta— provides training to those underwriters. (*Id.* ¶ 10). Thus, the length and depth of training an underwriter may receive varies from customer to customer. Depending on the customer, an underwriter's training may last anywhere from a week and a half to more than a month. Those training sessions may cover a range of topics, including different mortgage products, different software tools, different underwriting guidelines, and various credit policies. (*Id.*) Further, Zenta's customers establish criteria for evaluating an underwriter's performance and set benchmarks for determining whether an underwriter is qualified to underwrite loans on the customer's behalf. (*Id.* ¶¶ 10, 16).

The principal differences among the duties and responsibilities of the mortgage underwriters who work for Zenta's various customers depend on the particular underwriting guidelines each customer has established and the mortgage products each customer offers. (*Id.* ¶¶ 11-15). First, because each customer sets its own underwriting guidelines, the factors an underwriter must consider in deciding whether to underwrite a loan vary from customer to customer. (*Id.* ¶ 15). In addition, the duties performed by each mortgage underwriter vary

5

depending on the products offered by the particular customer for whom that underwriter works. For instance, some customers, such as Citibank, offer both "conforming" and "non-conforming" loans. Conforming loans are loans that meet the loan limits set by the Federal Home Mortgage Corporation ("Freddie Mac") or the Federal National Mortgage Association ("Fannie Mae") and thus qualify for sale to those agencies on the secondary mortgage market. (*Id.* ¶ 11). Underwriting "non-conforming" loans involves different considerations from traditional loans and requires an underwriter to identify "compensating factors," such as greater personal assets or investment income, that offset the increased risk posed by the loan. (*Id.*)

Further, not all of Zenta's customers are mortgage lenders. The job duties of the mortgage underwriters who work for United Guaranty, for instance, differ from those who work for Zenta's other customers. United Guaranty is not a lender, but instead offers mortgage insurance, which protects lenders against possible default by a borrower and is often required when the amount of a loan exceeds 80% of the collateral's value. (*Id.* ¶ 12). Underwriters who work for United Guaranty do not approve loans, but provide a quality control function by reviewing approved loan applications from the approximately 28 correspondent lenders with which United Guaranty does business. (*Id.* ¶ 13). Underwriters who work for United Guaranty review these loan applications to ensure that the loans meet the lender's applicable underwriting guidelines, are eligible for mortgage insurance, and meet industry standards for sale on the secondary mortgage market. (*Id.*) Accordingly, these underwriters must become familiar with a greater variety of mortgage products and underwriting guidelines than underwriters in other departments. Further, due to their quality control function, underwriters who work for United Guaranty must learn to identify issues that other underwriters may have missed. (*Id.* ¶¶ 13, 14). These underwriters frequently spend time advising correspondent lenders about the applicable

3067054v5

underwriting guidelines, secondary market standards and United Guaranty's own insurance policies. (*Id.* ¶ 14).

Expectations regarding efficiency and proficiency also vary from customer to customer. Each customer establishes its own quality control measures and sets its own requirements regarding the quality control scores an underwriter must maintain in order to authorize loans on its behalf. (*Id.* ¶ 16).

### B. Variations Among Underwriters' Duties and Responsibilities Based on Types of Loans, Seniority, and Position Within Underwriter's Department

In addition to variations among customers, the duties and responsibilities of the mortgage underwriters Zenta employs also vary depending on (i) the type of loans with which the underwriter works and (ii) the underwriter's individual credit authority, certifications, relative seniority, and position within his or her department.

First, the duties and responsibilities of underwriters vary depending on the types of loans they evaluate and underwrite. Some underwriters, especially those who are more junior, may deal primarily with conforming loans or refinancings. (*Id.* ¶ 17). However, as an underwriter gains greater experience, he or she may underwrite non-conforming loans, "jumbo loans,"[2] or loans to borrowers who are self-employed. (*Id.*) Underwriting these types of loans involves different considerations and requires underwriters to assess a greater variety of information about a borrower. (*Id.*) For instance, in order to underwrite a loan to a self-employed borrower, an underwriter must be able to analyze information about the profitability of the potential borrower's business, personal assets, and investments. (*Id.*) Whether an underwriter has

---

[2] "Jumbo loans" are loans for amounts that exceed limits set by the Federal Housing Administration ("FHA"). Whether mortgage underwriters working for Zenta are allowed to underwrite jumbo loans depends not only on superiority and credit authority but also the particular customer. Some customers allow qualified underwriters who work for Zenta to underwrite jumbo loans, while other do not. (Grich Decl. ¶ 11). Even with regard to those who do, the underwriter must first qualify to do so under criteria set by the customer. (*Id.* ¶ 16).

3067054v5

authority to underwrite these more complex loans on behalf of a customer depends on the underwriter's experience, seniority, and certifications.

Second, the duties underwriters perform also vary depending on their seniority and position within their department. Underwriters work in teams of 13-24, headed by a more senior underwriter who serves as a "team lead." (*Id.* ¶ 19). Team leads are tasked with managing the workflow among the underwriters on their team and ensuring the quality of the underwriting decisions made by their team members. (*Id.*) Team leads participate in daily meetings with the director of their department to assess issues concerning workflow, personnel, and other management issues. (*Id.*)

In addition, other underwriters are assigned to a dedicated audit team that is responsible for reviewing the work of other underwriters to ensure accuracy and proficiency. (*Id.* ¶ 20). The audit team is typically comprised of the most senior underwriters and is tasked with identifying areas where underwriters need additional training and providing that training as required. (*Id.*) The job responsibilities of team leads and members of the audit team include serving as mentors to more junior underwriters. (*Id.*) Accordingly, both frequently field questions from other underwriters about more complex loans or other issues that arise during the underwriting process. (*Id.* ¶¶ 19, 20). Thus, the duties and responsibilities of underwriters who serve as team leads or members of the audit team differ greatly from those of other mortgage underwriters Zenta employs.

3067054v5

## ARGUMENT

### I.  CERTIFICATION OF A COLLECTIVE ACTION IS INAPPROPRIATE WHEN THE PLAINTIFF IS NOT SIMILARLY SITUATED TO MEMBERS OF THE PROPOSED CLASS

Section 216(b) of the FLSA permits an individual plaintiff to bring an action on behalf of himself and other employees, "provided that the other employees are 'similarly situated' to the plaintiff." *Syrja v. Westat*, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (quoting 29 U.S.C. § 216(b)) (emphasis added).[3]  Thus, as this Court explained in *Grace v. Family Dollar Stores, Inc.*, a collective action is inappropriate where the plaintiff and his proposed class are not "similarly situated":

> Certification of a collective action under § 216(b) is a tool of judicial economy and is used to find an "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [activity]." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L. Ed. 2d 480 (1989). Collective actions are only appropriate, however, when plaintiffs are "similarly situated," and a common resolution would be appropriate. *See Dybach v. Florida Dept. of Corrections*, 942 F.2d 1562 (11th Cir. 1991).

2007 U.S. Dist. LEXIS 66096, at *5, 8 (W.D.N.C. Sept. 6, 2007).

In other words, allowing a suit to proceed as a collective action does not serve the interests of judicial economy, and is thus inappropriate, when "multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" *Syrja*, 756 F. Supp. 2d at 686 (citing *Purdham v. Fairfax County Pub. Schs.*, 629 F. Supp. 2d 544, 549 (E.D. Va. 2009)).  Moreover, a plaintiff who seeks to bring a collective action "bears the burden of establishing that he and the group he wishes to represent

---

[3]      In pertinent part, Section 216(b) provides:  "An action to recover liability prescribed [in this subsection] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and others employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added).

3067054v5

are similarly situated." *Grace*, 2007 U.S. Dist. LEXIS 66096 at *5 (citing *Holt v. Rite Aid Corp.*,

333 F. Supp. 2d 1265, 1269 (M.D. Ala. 2004)); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086,

1096 (11th Cir. 1996). As set forth below, Plaintiff in this case has failed to meet his burden.

A.      **A Court Should Deny Conditional Certification Where Substantial Evidence Already Exists That The Members of the Proposed Class Are Not Similarly Situated**

Notwithstanding Plaintiff's attempts to characterize his burden at the conditional

certification stage as "minimal" or even "extremely minimal," (P.'s Mem. at 1, 10), district

courts within this Circuit have repeatedly denied conditional certification "'when sufficient

evidence in the record at the initial 'notice' stage makes it clear that [conditional certification] is

not appropriate.'" *Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham*, 629 F. Supp. 2d at 547);

*Andrade v. Aerotek, Inc.*, 2009 U.S. Dist LEXIS 76029, at *12  (D. Md. Aug. 26, 2009); *Grace*,

2007 U.S. Dist. LEXIS 66096 at *8. Thus, when the evidence in the record shows that there are

substantial variations among the job duties performed by the members of the plaintiff's proposed

class—as there are in this case—the Court should deny conditional certification and refrain from

facilitating notice to seek other potential plaintiffs. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at

*8 (holding collective action not appropriate when a determination as to whether the plaintiffs

are similarly situated "would require a fact-specific inquiry into the daily duties of each plaintiff,

a determination that defeats the point of a collective action.").

Plaintiff is correct that district courts in this Circuit generally follow a two-step process in

determining whether to certify a collective action. *Syrja*, 756 F. Supp. 2d at 686; *Purdham*, 679

F. Supp. 2d at 548. At the first step, which is sometimes known as the "notice stage," the Court

makes "a threshold determination 'whether the plaintiffs have demonstrated that potential class

members are "similarly situated"' such that court-facilitated notice to the putative class members

would be appropriate." *Syrja*, 756 F. Supp. 2d at 686 (quoting *Camper v. Home Quality Mgmt.*,

10

*Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). If the court determines that an exercise of its discretion to facilitate such notice is appropriate, it "conditionally certifies" the class and allows the suit to proceed through discovery as a collective action. *Syrja*, 756 F. Supp. 2d at 686. At the second step, following the conclusion of discovery, "the court engages in a more stringent inquiry to determine whether the plaintiff class is in fact 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Id.*

Plaintiff, however, incorrectly describes both his own burden and the scope of the Court's inquiry at the conditional certification stage, contending that this Court should consider only the "pleadings and any declarations submitted *by the plaintiffs*." (P's Mem. at 2, 9) (emphasis added). To the contrary, this Court need not ignore evidence in the record that demonstrates a collective action would be inappropriate.

As this Court held in *Grace*, even at the first step, a Plaintiff "'must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class.'" 2007 LEXIS 66096 at *6 (quoting *Holt*, 333 F. Supp. 2d at 1270). The case the Court cited for that proposition, *Holt v. Rite Aid Corporation*, stressed that such an evidentiary showing is *necessary*, because "[w]ithout such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." 333 F. Supp. 2d at 1270.

Courts within this Circuit have reiterated the need to consider all of the evidence in the record when considering whether to certify a collective action, even at the conditional certification stage. Thus, district courts have held that "[a]lthough plaintiffs need only put forward 'relatively modest' evidence that they are similarly situated in order to obtain approval

to proceed as a class," the Court *may "deny certification outright" when "sufficient evidence in the record . . . makes it clear that notice is not appropriate.*" *Syrja*, 756 F. Supp. 2d at 686 (emphasis added) (holding considering defendant's evidence duties among interviewers for statistical surveys differed between assignments and between managers); *Purdham*, 629 F. Supp. 2d at 544 (considering defendant's evidence that members of the proposed class performed different duties and thus were not similarly situated).

In *D'Anna v. M/A-Com. Inc.*, the court stressed the need to ensure a suit is amenable to collective action before granting a request for conditional certification, stating:

> As a matter of sound case management, a court should, before offering to assist in locating additional plaintiffs, make a preliminary inquiry as to whether a manageable class exists. The courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation. Furthermore, an employer should not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.

903 F. Supp. 889, 893-94 (D. Md. 1995) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)); *see also Syrja* 756 F. Supp. 2d at 689 ("Ultimately, the significance of manageability concerns at the notice stage is, like other aspects of the conditional certification analysis, a decision for the Court on the facts before it.").

Accordingly, this Court is not bound to accept Plaintiff's attempt to gloss over the numerous variations among the duties performed by the mortgage underwriters who comprise his proposed class, but may instead recognize—based on all evidence in the record—that proceeding with this suit as a collective action would require numerous individualized factual determinations that are inappropriate for common resolution.[4]

---

[4]     Plaintiff's assertion that he should be subject to a more lenient standard because "the parties have only recently begun the process of formal discovery" should be given no weight.

**B.** **To Be Similarly Situated, Plaintiff and the Proposed Class Must Have Shared the Same Job Duties**

To show that he is similarly situated to the proposed class, Plaintiff must demonstrate that he and the proposed class shared the same job duties during their employment with Zenta. The principal issue in this case is whether Zenta correctly classified Plaintiff as an exempt employee under the FLSA—an issue that turns on the job duties Plaintiff actually performed during his short tenure as a mortgage underwriter for Zenta. Zenta contends that Plaintiff's employment was exempt from the overtime requirements of the FLSA under, among other things, the "administrative exemption" provided by 29 U.S.C. § 213(a)(1). The regulations defining that exemption provide that it applies to an employee:

> (i) compensated on a salary basis of at least $455 per week;
>
> (ii) whose "primary duty is the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers;" and
>
> (ii) whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

20 C.F.R. § 541.200(a). Thus, resolution of Plaintiff's claim will require the Court to determine whether the Plaintiff's duties as a mortgage underwriter included "the exercise of discretion and independent judgment with respect to matters of significance." Accordingly, in order to be similarly situated, Plaintiff and the members of the potential class must share the same job duties. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at *8 (holding that because individual

---

(P.'s Mem. at 8). During the parties' Rule 26(f) conference, Defendant's counsel suggested that the parties make provisions for an initial round of discovery focused on the issue of class certification. Plaintiff's counsel declined that invitation on the basis that Plaintiff had all of the evidence needed to assert his claim for conditional certification. Accordingly, the Rule 26(f) report postpones all discovery until after the resolution of Plaintiff's motion for conditional certification.

3067054v5

managers in the potential class had different duties "it is impossible to apply one plaintiff's duties to another" in order to determine whether the administrative exemption applies).

Because the propriety of the exemption turns on the nature of the duties an employee actually performs, this Court has held an allegation that an employer classified employees in a particular job category as exempt is insufficient to show they are similarly situated. *Grace*, 2007 U.S. Dist. LEXIS 66096 at *7; *see also Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009) ("[F]ocusing on the uniform exemption policy alone does little to further the . . . assessment of the relationship between individual and common issues."); *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 927 (D. Ariz. 2010) ("As a matter of both sound public policy and basic common sense, the mere classification of a group of employees . . . is not by itself sufficient to constitute the necessary evidence . . . that renders all putative class members as 'similarly situated' for § 216(b) purposes."); *Holt*, 333 F. Supp. 2d at 1270-72 (rejecting plaintiff's attempt to meet the similarly situated requirement by pointing to defendant's alleged policy of classifying class members as exempt); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (finding that the "common scheme" alleged by plaintiffs did not make them similarly situated to putative class members because "what plaintiffs are really challenging here is defendant's determination that they are exempt").

Instead, Plaintiff must show he and the members of the class shared the same job duties. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at *7. That is because, when "the ultimate issue to be determined is whether each employee was properly classified as exempt under the FLSA, the 'similarly situated' inquiry must be analyzed in terms of the nature of each putative plaintiff's job duties." *Trinh v. JP Morgan Chase & Co.*, 2008 U.S. Dist. LEXIS 33016, at *13 (S.D. Cal. Apr. 22, 2008); *Holt*, 333 F. Supp. 2d at 1272 ("The 'similarly situated' inquiry . . . must be analyzed

in terms of the nature of the *job duties performed by each putative plaintiff*, because the ultimate issue to be determined is whether each employee was properly classified as exempt." (emphasis added). Accordingly, when the job duties performed by the members of the proposed class vary, the propriety of the exemption cannot be determined on a class-wide basis. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at *8 ("The variations in duty are the very reason why a collective action is inappropriate."); *Syraj*, 756 F. Supp. 2d at 687 (denying conditional certification as collective action where individual duties varied among members of the proposed class); *Holt*, (denying motion for collective action where duties performed by the members of the putative class varied); *Morisky v. Pub. Serv. Elec. & Gas Co*. 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (same).

Plaintiff cannot support his bid to transform this suit into a collective action by lumping himself together with all other mortgage underwriters solely on the basis of job title. *See Romero v. Mountaire Farms, Inc.*, 2011 U.S. Dist. LEXIS 61738, at *5 (E.D.N.C. June 8, 2011) (holding that in order to be similarly situated, "putative class members . . . [must] raise a similar legal issue as to coverage, exemption, or nonpayment of . . . overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions"). Because Plaintiff's proposed class of "all" mortgage underwriters employed by Zenta includes employees in a number of departments, performing a number of duties, under various different circumstances, Plaintiff cannot make such a showing. Accordingly Plaintiff's motion for conditional certification—as well as his request that the Court assist in his effort to seek additional plaintiffs—should be denied.

3067054v5

## II. THE DUTIES OF MORTGAGE UNDERWRITERS VARY AND REQUIRE INDIVIDUALIZED DETERMINATIONS

The duties of the various Zenta employees who hold or have held the title "mortgage underwriter" vary greatly from (i) customer to customer; (ii) loan product to loan product, and (iii) individual underwriter to individual underwriter. (Grich Decl. ¶ 4). Accordingly, Plaintiff and his proposed class are not similarly situated for purposes of 29 U.S.C. § 216(b). Determining whether each employee meets the criteria for an applicable exemption would involve numerous subcategories of underwriters. The distinctions among the day-to-day duties of Zenta's underwriters render the prospect of a collective action inefficient, unwieldy, and inappropriate.

The variations in the duties performed by Zenta's mortgage underwriters are precisely the type of variations that preclude a class-wide determination of the applicability of the FLSA administrative exemption to Zenta's underwriters. As set forth above, whether the administrative exemption applies to a given mortgage underwriter requires a court to determine whether the job duties the underwriter *actually performed* involved the use of "discretion and independent judgment." 20 C.F.R. § 541.200(a).

The duties among the mortgage underwriters who comprise Plaintiff's proposed class vary in ways that bear directly on the exercise of discretion and independent judgment. First, the duties underwriters perform differ depending on the customer for whom they work. (Grich Decl. ¶ 7). Each customer (i) sets its own mortgage underwriting guidelines (*Id.* ¶ 15); (ii) establishes its own job description for the mortgage underwriters that perform work on its behalf (*Id.* ¶ 9); (iii) provide its own training (*Id.* ¶ 10); and (iv) offers different mortgage products of varying complexity (*Id.* ¶ 11). The specificity and flexibility of the underwriting guidelines mortgage underwriters must apply vary from customer to customer. (*Id.* ¶ 15). Moreover some customers,

16

such as Citibank, offer non-conforming loans, which require underwriters to identify compensating factors such as increased personal assets or investment income to offset areas of increased risk. (*Id.*) However, not all customers offer such loans. (*Id.*) The duties performed by mortgage underwriters who work for United Guaranty vary to an even greater degree. Underwriters who work for United Guaranty review loan applications to determine whether they qualify for mortgage insurance and possible resale on the secondary mortgage market and do not make the initial underwriting decision. (*Id.* ¶ 12-15). Further, because of their quality control function, those underwriters spend time advising United Guaranty's 28 correspondent lenders on applicable mortgage insurance and secondary market standards. (*Id.* ¶ 14).

Second, the nature of an underwriter's duties vary depending on the type of products with which he or she works. (*Id.* ¶¶ 17-18). More experienced underwriters may review applications for non-conforming loans, jumbo loans, or loans to self-employed borrowers. Evaluating loan applications for these loans involves different considerations than more traditional loans. (*Id.* ¶ 17). Whether an underwriter works with these more complex loans, however, depends on the underwriter's individual experience, certifications, and credit authority. (*Id.* ¶ 18).

Finally, Plaintiff's proposed class includes mortgage underwriters who serve as team leads or members of Zenta's audit team. (*Id.* ¶ 19). Team leads devote a considerable amount of time to coordinating workflow, reviewing the work of the members of their team, addressing personnel issues, and serving as mentors to more junior underwriters. (*Id.*) Likewise, members of the audit team do not directly underwrite loans, but perform a quality control function, reviewing previously underwritten files determine the areas where additional training and coaching may be needed. (*Id.*)

Courts within this district have repeatedly refused to issue conditional certification when the job duties performed by the proposed class vary as they do here.  In *Grace*, this Court refused to conditionally certify a class of store managers because "each individual manager had different duties at his or her particular store." 2007 U.S. Dist. LEXIS 66096 at *8 ("The variations in duty are the very reason why collective action is inappropriate").  In its decision, the Court observed that "[a] collective action is never appropriate for situations where a court must make an individual determination of each plaintiff's day-to-day activities." *Id.*

Likewise in *Syraj v. Westat*, the court found that field interviewers employed by a statistical research company were not similarly situated when each interviewer's assignments varied from station to station, manager to manager, and individual subject to individual subject. *See* 756 F. Supp. 2d at 687 (observing assignments could vary in an "infinite" number of ways depending on the subject interviewed).  Similarly, in *Purdham v. Fairfax County Public Schools*, the court held that conditional certification of a  proposed class of school employees who worked as after-hours volunteers was inappropriate when the duties performed by the employees differed from school to school.   *See* 629 F. Supp. 2d at 549 (holding resolution would require individualized determinations into "localized decisions").

These cases stand for the proposition that a court should deny a request for collective action when "multiple claims . . . require 'substantial individualized determinations for each class member.'" *Syraj* 756 F. Supp. 2d at 687 (quoting *Purdham*, 629 F. Supp. 2d at 549); *see also Andrade,* 2009 U.S. Dist. LEXIS 76029 at *13 (holding proposed class of recruiters were not similarly situated when their duties varied from "office to office" and "division to division" as well as with regard to the "type and number" of recruits that they met).

3067054v5

In both his declaration and his memorandum, Plaintiff glosses over the numerous variations in the duties performed by the members of his proposed class, and asks this Court to do the same. In conclusory fashion, Plaintiff asserts that "[n]otwithstanding any content differences as between contracting banks, mortgage underwriters were required to mechanically apply the bank's guidelines." (P.'s Mem. at 11). Plaintiff then erroneously argues, without attribution, that the Court should consider Zenta's classification of mortgage underwriters as exempt in determining whether they are similarly situated. (P.'s Mem. at 11-12). Under well established law set forth above, however, an allegation that an employer classified employees in a particular job category as exempt is insufficient to show they are similarly situated. *Grace*, 2007 U.S. Dist. LEXIS 66096 at *6-7; *see also Vinole,* 571 F. 3d at 946 ("[F]ocusing on a uniform exemption policy alone does little to further the . . . assessment of the relationship between individual and common issues.").

Instead, Plaintiff must show that he and the members of the proposed class shared the same job duties. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at *8; *Holt*, 333 F. Supp. 2d at 1271. Plaintiff offers no evidence in this regard. To the contrary, in his declaration Plaintiff concedes that the underwriting guidelines vary from customer to customer. (Savitskie Decl. ¶ 4). Nevertheless, Plaintiff contends he and the members of his proposed class are similarly situated based solely on the conclusory assertion that such differences should not matter. (*Id.* ¶ 7). Such conclusory allegations contained in a declaration, however, are not evidence and are insufficient to show Plaintiff and the members of the proposed class are similarly situated. *See Guinness PLC v. Ward*, 955 F.2d 875, 901 (4th Cir. 1992) (holding "the mere placement . . . of conclusory allegations and speculative assertions into affidavits or declarations without further legitimate support" does not constitute "evidence"). Likewise, those allegations do nothing to alleviate the

prejudice and inefficiency that would result from litigating this case on a class-wide basis. *See Syrja*, 756 F. Supp. 2d at 686 (holding the court may "deny certification outright" when "sufficient evidence in the record . . . makes it clear that notice is not appropriate").

The various mortgage underwriters Zenta employs operate under different underwriting guidelines, perform services for different customers, and work with different mortgage products. Moreover, the mortgage underwriters who comprise Plaintiff's proposed class include not only traditional underwriters but also team leads and audit team members. Thus, determining whether Zenta's mortgage underwriters are exempt under the FLSA cannot be done on a class-wide basis. Instead, such a determination "would require a cumbersome, individualized analysis of each member's particular factual circumstances" that is inappropriate for a collective action under 29 U.S.C. § 216(b). *See Syraj*, 756 F. Supp. 2d at 690. As this Court has observed in previous cases, such a procedure would be the opposite of judicial efficiency and would do nothing other "stymie" the efficient resolution of the case before this Court. *See Grace*, 2007 U.S. Dist. LEXIS 66096 at *7. Accordingly, this Court should deny Plaintiff's request that it facilitate notice of this lawsuit in order to solicit additional plaintiffs.

## III. IN THE EVENT THIS COURT GRANTS PLAINTIFF'S MOTION, TO FACILITATE NOTICE, PLAINTIFF'S PROPOSED NOTICE SHOULD BE LIMITED.

In the event that this Court chooses to grant Plaintiff's motion to facilitate notice, the Court should limit Plaintiff's requests in order to provide a more reasonable notice procedure and to better protect the privacy of Zenta's current and former employees. Plaintiff has not met his burden to show why the notice procedures he seeks are necessary for this case. First, Plaintiff proposes to notify the members of the potential class action by first class mail, and seeks the names and addresses of all current and former Zenta underwriters for that purpose. (P.'s Mem.

at 3). The additional forms of notice requested by Plaintiff, including his request that such notice be placed on bulletin boards within Zenta's facilities, are unnecessary and overbroad. Plaintiff has offered no basis for including them, and, in fact, other courts have rejected similar requests. *See, e.g.*, *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 920 (S.D. Tex. 2010) ("Defendant need not post the notice and consent forms in a place where potential class members are likely to view them, as Plaintiff requests. Notice by mail is sufficient under the circumstances of this case."); *Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, at *41 (W.D.N.Y. Oct. 20, 2009) (ruling that notice by mail as sufficient and denying requests that defendant post notice at its facilities was premature and unnecessary because current employees would be motivated to provide current mailing addresses).

Second, because mailing is sufficient to provide notice under 29 U.S.C. § 216(b), Plaintiff's request for unnecessary identifying information about the members of the potential class, including his requests for telephone numbers and social security numbers, should be denied. *Hintenberger*, 2009 U.S. Dist. LEXIS 97944 at *36 ("The Court agrees that, in the interest of privacy, [defendant] need not produce phone numbers, social security numbers, dates of birth, and e-mail addresses."); *Gordon v. Kaleida Health*, 2009 U.S. Dist. LEXIS 95729, at *31 (W.D.N.Y. Oct. 13, 2009) (same).

Finally, Plaintiff's request to have Hefler, Radetich & Saitta LLP named "Notice Administrator" should be denied. Plaintiff has made no showing that such an administrator is either reasonable or necessary under the circumstances. Further, Plaintiff has provided no details regarding the cost of such an administrator, nor any legal authority for the use of such an administrator.

21

## <u>CONCLUSION</u>

Plaintiff is not similarly situated with the prospective members of his proposed class, and conditional certification of this action under 29 U.S.C. § 216(b) would, therefore, be inappropriate. Due to the numerous, substantive variations in the duties performed by the mortgage underwriters Zenta employs, resolution of their potential FLSA claims on a class-wide basis would require individualized factual determinations that would hamper judicial efficiency, burden this court, and unduly prejudice the litigants in this case. Accordingly, Plaintiff's Motion to Facilitate Notice should be denied.

This 20th day of July, 2011.

s/ Douglas M. Jarrell
David C. Wright, III
N.C. Bar No. 11161
dwright@rbh.com
Douglas M. Jarrell
N.C. Bar No. 21138
djarrell@rbh.com
Matthew F. Tilley
N.C. Bar No. 40125
mtilley@rbh.com

Attorneys for Defendant Zenta Mortgage Services, LLC

ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246-1900
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

22

3067054v5

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the foregoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Tamara W. Brooks
> lawbrooks@bellsouth.net
>
> Shanon J. Carson
> Sarah R. Schalman-Bergen
> Berger & Montague, P.C.
> scarson@bm.net
> sschalman-bergen@bm.net

This 20th day of July, 2011.

> s/ Douglas M. Jarrell
> David C. Wright, III
> N.C. Bar No. 11161
> dwright@rbh.com
> Douglas M. Jarrell
> N.C. Bar No. 21138
> djarrell@rbh.com
> Matthew F. Tilley
> N.C. Bar No. 40125
> mtilley@rbh.com
>
> Attorneys for Defendant Zenta Mortgage Services, LLC
>
> ROBINSON, BRADSHAW & HINSON, P.A.
> 101 North Tryon Street, Suite 1900
> Charlotte, North Carolina 28246-1900
> Telephone: (704) 377-2536
> Facsimile: (704) 378-4000

3067054v5