IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:11-CV-129

JOSEPH SAVITSKIE, individually and on behalf of all persons similarly situated,

    Plaintiff,

v.

ZENTA MORTGAGE SERVICES, LLC,

    Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(b)**

Plaintiff Joseph Savitskie, individually and on behalf of all persons similarly situated, respectfully submits this Reply Brief in support of his Motion to Facilitate Notice under 29 U.S.C. § 216(b), Dkt. No. 16 ("Plaintiff's Notice Motion").

**I.    INTRODUCTION**

Plaintiff filed this collective action lawsuit against Defendant Zenta Mortgage Services LLC ("Zenta" or "Defendant") to challenge Zenta's uniform designation of mortgage underwriters as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Zenta's mortgage underwriters are subject to the same policies and practices which result in FLSA violations of failing to pay mortgage underwriters at one-and-one-half their regular rate for all hours worked in excess of forty in a week.

In support of his opening brief, Plaintiff submitted his own declaration and the declarations of four other mortgage underwriters (collectively "Opt-In Plaintiffs") who have affirmatively opted into this case in writing. Plaintiff's motion is intended to provide notice of

1

this lawsuit to similarly situated mortgage underwriters and provide them the opportunity to join the suit and toll the statutes of limitations on their claims.

Defendant's Opposition Brief focuses on minor differences between **_groups_** of employees that Defendant attempts to paint as differences between **_individual_** employees. *See* Defendant's Brief in Opposition to Plaintiff's Motion to Facilitate Notice ("Opp. Br."), Dkt. No. 18. Indeed, Defendant's Brief did not challenge the assertion that Plaintiff and Zenta's mortgage underwriters worked in excess of forty hours in a week without overtime compensation. Instead, Defendant's brief focused on differences between (1) contracting banks; (2) loan products underwritten; (3) and mortgage underwriters who also served as team leads and quality control vis-à-vis mortgage underwriters who did not hold those positions.

Defendant's contention that these differences between groups of employees make conditional certification inappropriate must fail because such differences fail to raise **_individual_** concerns. Moreover, the differences Defendant alleges are not relevant to the principal issue in administrative exemption cases brought by loan officers or mortgage underwriters, which is whether their duties are related to setting "management policies" or to "general business operations." *See Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 534 (2d Cir. 2009).

Plaintiff has satisfied his minimal burden at this stage to justify conditional certification and notice to be sent to Defendant's mortgage underwriters. Plaintiff's Motion should be granted.

## II. ARGUMENT

### A. Defendant Fails To Acknowledge The Lenient Standard At The Condition Certification Stage

As a primary matter, Defendant fails to acknowledge the lenient standard for determining whether conditional certification and notice is appropriate at the initial stages of an FLSA claim.

2

Defendant is incorrect when it claims that Plaintiff mischaracterizes the minimal standard courts should apply at the conditional certification. Opp. Br. at 10. Rather, it is district and appellate courts throughout the country, including courts in this Circuit, who have characterized the standard for determining whether employees are "similarly situated" at the initial stage as "not particularly stringent, fairly lenient, flexib[le], not heavy, and less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b)." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-61 (11th Cir. 2008), *cert den'd*, 130 S. Ct. 59 (2009) (citations omitted); *see also Calderon v. GEICO Gen. Ins. Co.*, No. 10-cv-1958, 2011 WL 98197, at *7 (D. Md. Jan. 12, 2011) ("[T]his Court's case law reflects the view that a 'lenient standard' should be applied at the conditional certification stage because few facts have been developed regarding the relative job responsibilities of the potential collective action plaintiffs."); *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (conditionally certifying class of mortgage underwriters and describing standard as "lenient," which "usually results in certification"); *Lineras v. Inspiration Plumbing*, No. 1:10-cv-324, 2010 WL 3909470, at *1 (E.D. Va. Sept. 23, 2010) (describing initial standard for conditional certification as "fairly lenient," that requires only "minimal evidence"); *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (describing the burden as "very low" at the notice stage).

The determination of conditional certification and notice in FLSA actions at an early stage is so critical, and the burden is so minimal, because the statute of limitations continues to run until individuals affirmatively "opt in" to the action. *See, e.g.*, *Montoya v. S.C.C.P. Painting Contractors, Inc.*, No. 07-455, 2008 WL 554114, at *4 (D. Md. Feb. 26, 2008) ("Because each potential plaintiff must affirmatively opt in to the lawsuit, and because the statute of limitations continues to run with respect to each potential plaintiff's collective action claim until that

3

plaintiff files the written consent form, court-facilitated notice is crucial."); *Lineras*, 2010 WL 3909470, at *1 ("Because the statute of limitations … continues to run until such plaintiffs file their written consents, courts are permitted to certify a collective action early on in a proceeding, typically before any significant discovery, upon an initial showing that the members of the class are similarly situated.") Thus, delaying notification will cause serious prejudice to potential opt-in plaintiffs because "every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover." *Lynch*, 491 F. Supp. 2d at 371. This consideration, standing alone, weighs heavily in favor of early notification. *See id.* ("Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations.").

Plaintiff has submitted sufficient evidence that he and other mortgage underwriters are similarly situated such that it is appropriate for the Court to order that notice be sent to other mortgage underwriters to permit them the opportunity to joint this lawsuit and toll the statute of limitations on their claims. Defendant's concerns about the class are more appropriately addressed at the decertification stage, after discovery, when the court takes a more stringent factual inquiry as to whether members of the collective class are similarly situated.[1] *See Romero v. Mountaire Farms, Inc.*, No. 7:09-CV-190, 2011 WL 2358506, at *2 (E.D.N.C. Jun. 9, 2011) (describing two-step inquiry in collective actions beginning with a preliminary determination using a "fairly lenient" standard and followed by a post-discovery inquiry with "more rigorous" scrutiny);

---

[1] Defendant attempts to import a Rule 23 standard into the current motion by citing to *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009). *Vinole* is inapposite, however, as it relates to a court's consideration of the predominance requirement under Rule 23(b)(3). *Id.* at 948. Federal Rule of Civil Procedure 23, however, imposes a more stringent standard for class certification than section 216(b). *See Williams v. XE Servs., LLC*, No. 2:09-cv-059, 2011 WL 52353, at *2 n.5 (E.D.N.C. Jan. 4, 2011).

4

*see also Nolan v. Reliant Equity Investors, LLC*, No. 3:08-CV-62, 2009 WL 2461008, at *7 (N.D. W.Va. Aug. 10, 2009) (describing two-stage inquiry in 216(b) cases).

  **B.**   **Defendant's Arguments Relating To Differences Between Groups Of Its Mortgage Underwriters Do Not Preclude Notice at the Conditional Certification Stage**

In its opposition, Defendant has only pointed to differences between *groups* of mortgage underwriters. Defendant primarily points to alleged differences between mortgage underwriters who: (1) work under different customer contracts; and (2) who have different titles (*e.g.*, team leads, auditors). Opp. Br. at 4-8. Defendant's arguments fail to rebut Plaintiff's showing that mortgage underwriters are sufficiently "similarly situated" to permit the Court to facilitate notice.

  **1.**   **Mortgage Underwriters Who Work Under Different Customer Contracts Are Similarly Situated**

Defendant states that "the principal differences among the duties and responsibilities of the mortgage underwriters who work for Zenta's various customers depend on the particular underwriter guidelines each customer has established and the mortgage products each customer offers." Opp. Br. at 5 (citing Declaration of Lynn Grich ("Grich Decl.") ¶¶ 11-15, attached to Opp. Br. as Ex. 1, Dkt. No. 18-1). Yet, Defendant fails to illustrate or describe any relevant effect of the differing guidelines on the duties of mortgage underwriters or point to any specific difference that would preclude a finding that all mortgage underwriters under all the contracts are similarly situated. As Defendant noted, the duties of mortgage underwriters are to "analyz[e] loan applications to assess . . . whether the risk . . . is acceptable . . . under the lender's credit policies [whatever those policies may say]." *Id.* at 3; *see also Robinson v. Empire Equity Group, Inc.*, No. 09-cv-1603, 2009 WL 4018560, at *3-4 (D. Md. Nov. 18, 2009) (conditionally certifying class of mortgage officers where defendant's evidence described the "essential duties"

5

of mortgage officers as being the same, notwithstanding defendant's submitted declarations alleging minor differences). Defendant's assertion that these guidelines differ, without more, is conclusory and fails to rebut Plaintiff and Opt-In Plaintiffs' contention that they are similarly situated.

Moreover, although Defendant does not at mention this fact in its brief, Ms. Grich's declaration acknowledges that Plaintiff and three of the Opt-In Plaintiffs (Spivey, Gross, and Mack) worked for two different customer banks. *See* Grich Decl. at ¶ 7. Additionally, Opt-In Plaintiff Lyle David Harrison worked for Zenta's contract with United Guaranty Services, Inc.[2] ("United Guaranty"). *See* Supplemental Declaration of Lyle David Harrison ("Harrison Supp. Decl.") ¶ 3 (attached as Ex. 1).

In their declarations, Plaintiff and Opt-In Plaintiffs (who Defendant concedes worked for different customers) provided detailed declarations that show: (1) that all they share the common duty of assessing whether loan applications meet underwriting guidelines promulgated by Zenta's contracting bank; (2) that they all worked in excess of forty hours in a week without being compensated at the statutorily required overtime premium; and (3) that they were uniformly classified as exempt. Declaration of Joseph Savitskie ("Savitskie Decl.") ¶¶ 6, 8-9, 11, 15 (attached as Ex. 3 to Plaintiff's Opening Brief, Dkt. No. 17-3); Declaration of Antoinette

---

[2] Defendant argues that "[t]he job duties of the mortgage underwriters who work for United Guaranty, differ from those who work for Zenta's other customers." Opp. Br. at 6. Zenta goes on to reason that, since United Guaranty utilizes Zenta's mortgage underwriting services for a different purpose, the duties themselves must be different. *Id.* Defendant has not put forth any evidence or reasoning concerning how the duties themselves are different. Specifically, Defendant has not shown that applying United Guaranty's guidelines to the loan applications involved different duties such that mortgage underwriters who worked for United Guaranty are not similarly situated to mortgage underwriters working for other customers. In his original declaration, Opt-In Plaintiff Harrison stated that his duties were the same as those of Plaintiff and other Opt-In Plaintiffs notwithstanding the different Zenta customer whose guidelines he applied. *See* Declaration of Lyle David Harrison ("Harrison Decl.") ¶¶ 6, 8-9, 11, 15 (attached to Plaintiff's Errata, Dkt. No. 19-1).

6

Gross ("Gross Decl.") ¶¶ 6, 8-9, 11, 15 (attached as Ex. 4 to Plaintiff's Opening Brief, Dkt. No. 17-4); Declaration of Lyle David Harrison ("Harrison Decl.") ¶¶ 6, 8-9, 11, 15 (attached to Plaintiff's Errata, Dkt. No. 19-1);[3] Declaration of Angela Mack ("Mack Decl.") ¶¶ 6, 8-9, 11, 15 (attached as Ex. 6 to Plaintiff's Opening Brief, Dkt. No. 17-6); Declaration of Randall Neal Spivey ("Spivey Decl.") ¶¶ 6, 8-9, 11, 15 (attached as Ex. 7 to Plaintiff's Opening Brief, Dkt. No. 17-7).

*__That is, Plaintiff and Opt-In Plaintiffs representing three of the four customers served by Defendant have submitted declarations stating that they have substantially similar duties__*. Defendant's disagreement amounts to a factual dispute and inquiry into the merits, which courts have uniformly found inappropriate to consider at the initial notice stage. *See, e.g.*, *Grayson v. K-Mart*, 79 F.3d 1086, 1099 (11th Cir. 1996) (holding the plaintiffs' allegations were sufficient to warrant conditional certification despite defendant's substantial allegations to the contrary supported by affidavits and depositions); *Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10-cv-4825, 2011 WL 2207586, at *2 (S.D.N.Y. Jun. 2, 2011) ("[A]t the initial stage, the court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations."); *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 214 (E.D.N.Y. 2009) ("Attacks on credibility are not properly decided by the Court on a motion for conditional certification."); *Scott v. Heartland Home Fin., Inc.*, No. 1:05-cv-2812, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006) ("[T]he Court declines to resolve factual issues or make credibility determinations at this stage."); *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 520 (D. Md. 2000) ("Factual disputes do not negate the appropriateness of court-facilitated notice."); *see also In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1071 (N.D.

---

[3] Plaintiff inadvertently omitted the second and third pages of the Declaration of Lyle David Harrison when electronically filing his Opening Brief, Dkt. No. 17-5. Plaintiff filed a true and correct copy of the complete Declaration upon discovery of the omission. *See* Dkt. No. 19-1.

7

Cal. 2007) ("Although defendants raise substantial issues regarding the reliability of these declarations, plaintiffs' factual showing satisfies the lenient standard warranting conditional certification….").

The fact that Defendant's mortgage underwriters service loans for different customers does not preclude notice being sent to mortgage underwriters where Plaintiff has submitted declarations from five mortgage underwriters who serviced different customers stating that they have similar job duties. *See Gee v. Suntrust Mortgage, Inc.*, No. C-10-1509-RS, 2011 WL 722111, at *3 (N.D. Cal. Feb. 18, 2011) (conditionally certifying class of mortgage underwriters based on declarations of five employees "who attest that their primary job duty was to review mortgage loan applications based on companywide guidelines."); *Robinson*, 2009 WL 4018560, at *3-4 (conditionally certifying class of mortgage officers where defendant's evidence described the "essential duties" of mortgage officers as being the same notwithstanding purported differences).

### 2. Mortgage Underwriters Are Similarly Situated For Conditional Certification Purposes Despite Defendant's Allegation That Duties Differ Based On Seniority

With regard to "team leads" and "audit team members" that Defendant contends have the title "mortgage underwriter," Defendant has not put forth sufficient information for the court to conclude that conditional certification is inappropriate. In Plaintiff's and Opt-In Plaintiffs' declarations, they averred that they are worked in the same office beside other mortgage underwriters and personally witnessed that Zenta's mortgage underwriters: (a) held the same job title; (b) had similar job duties; (c) had similar training; (d) shared the same supervision hierarchy; (e) shared the same human resource personnel; and (f) shared the same payroll personnel. Savitskie Decl. ¶ 15; Gross Decl. ¶ 15; Harrison Decl. ¶ 15; Mack Decl. ¶ 15; Spivey Decl. ¶ 15. Defendant submitted a declaration that contradicts those assertions, but at this first

8

stage, courts do not weigh factual disputes.[4] *Camper*, 200 F.R.D. at 520 ("Factual disputes do not negate the appropriateness of court-facilitated notice.").

In addition, a defendant's contention that some members of the class have "different higher level responsibilities," is not sufficient at the notice stage to demonstrate that Plaintiff is not similarly situated to potential class members. *See Riddle v. Suntrust Bank*, No. 1:08-CV-1411, 2009 WL 3148768, at *2 (N.D. Ga. Sept. 29, 2009) (conditionally certifying class of technicians over defendant's argument that certain members of the class had more expertise and responsibilities); *see also Gee*, 2011 WL 722111, at *3 (conditionally certifying class of mortgage underwriters over defendant's argument that duties varied by underwriting level). Courts have held that, for conditional certification purposes, some variation in duties is permissible. *See Calderon*, 2011 WL 98197, at *6 ("The minor variations in the job responsibilities of Security Investigators . . . do not undermine the Court's conclusion that Plaintiffs are 'similarly situated.' . . . The differences . . . deal more with how much time an

---

[4] Defendant's reliance on *Guinness PLC v. Ward*, 955 F.2d 875, 901 (4th Cir. 1992) for the proposition that Plaintiff's declarations should not be considered because they are conclusory is misplaced and inappropriate. The cited passage holds that a party's use of conclusory statements in affidavits and declarations does not suffice to support an assertion of a genuine issue of material fact ***for purposes of a motion for summary judgment***. *Guinness*, 955 F.2d at 901 ("[A] party when confronted with a proper motion for summary judgment on such issue must present 'evidence' . . . . [W]e do note that the mere placement . . . of conclusory allegations and speculative assertions into affidavits or declarations without further legitimate support does not suffice."). At the initial conditional certification phase, however, courts have routinely found that similar affidavits from Opt-In Plaintiffs may be appropriately considered. *See, e.g.*, *Bollinger*, 761 F. Supp. 2d at 1120 (conditionally certifying class of mortgage underwriters and holding that "at this stage, under a lenient standard, the use of similarly worded or even "cookie cutter" declarations is not fatal to a motion to certify an FLSA collective action."); *Labrie v. UPS Supply Chain Solutions, Inc.*, No. C08-3182, 2009 WL 723599, at*6 (N.D. Cal. Mar. 18, 2009) (finding defendant's argument that "identical, conclusory declarations" were not competent evidence as going to the merits); *In re Wells Fargo*, 527 F. Supp. 2d at 1060, 1071 (concluding that plaintiffs' cookie cutter declarations demonstrated a uniform policy and "... [a]lthough defendants raise substantial issues regarding the reliability of these declarations, plaintiffs' factual showing satisfies the lenient standard warranting conditional certification ...").

9

individual Security Investigator may spend addressing certain types of fraudulent claims-they do not undermine the overarching similarities in the job responsibilities….").

Rather, the appropriate question the court must consider is whether plaintiff and members of the proposed collective are "'***similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.***" *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *see also Robinson*, 2009 WL 4018560, at *3-4 (conditionally certifying class of mortgage officers where defendant's evidence described the "essential duties" of mortgage officers as being the same notwithstanding purported differences); *Chowdhury v. Duane Reade, Inc.*, No. 06-cv-2295, 2007 WL 2873929, at *4 (S.D.N.Y. Oct. 2, 2007) ("[D]efendants' attack on plaintiff's factual showing focuses mostly on irrelevant differences between plaintiff and opt-in plaintiffs. The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated 'with respect to their allegations that the law has been violated.'"). Plaintiff has made a sufficient showing that Defendant's mortgage underwriters are similarly situated for conditional certification purposes. *See Bollinger*, 761 F. Supp. 2d at 1120 (conditionally certifying class of mortgage underwriters who alleged "the existence of common job titles, job duties, compensation policies and the same violations of the FLSA").

### 3. Any Proven Differences Between Groups Of Mortgage Underwriters Can Be Appropriately Addressed at the Decertification Stage

Even assuming, *arguendo*, that Defendant's assertions regarding different contracts and more senior positions are correct (which Plaintiff contends they are not), neither of these alleged differences should prevent this Court from determining that notice is appropriate at this initial stage. *See Calderon*, 2011 WL 98197, at *4 ("At the conditional certification stage, 'the court does not make a conclusive determination that a class of similarly situated plaintiffs exists; it

10

merely determines whether the plaintiffs have made a modest factual showing of similar situation that justifies notifying potential plaintiffs of the suit.").

Rather, if, after discovery, Defendant is able to establish that differences between groups of mortgage underwriters based on the contract they worked on or their seniority make it impracticable to adjudicate their exempt status as one group, the court may decertify the class or alter the class definition by creating subclasses to address those differences. *See, e.g.*, *Sexton v. Franklin First Fin., Ltd.*, No. 08-cv-4950, 2009 WL 1706535, *3 (E.D.N.Y. Jun. 16, 2009) (granting conditional certification to loan officer class and holding that "[S]hould the class description later be shown to require additional modifications, they can be made, as appropriate during a second tier inquiry." (quoting *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 338 (W.D.N.Y. 2008)); *Calderon*, 2011 WL 98197, at *7 ("[I]f discovery reveals that there are substantial factual variations in the job responsibilities . . . , [Defendant] may file a motion to decertify the class.").

Defendant's argument that mortgage underwriters differ based on the contract they serviced or their specific position as "team leads" should not preclude conditional certification of the class such that notice may be sent out and individuals may be permitted the opportunity to Opt-In to this lawsuit at this initial stage of the litigation.

### C. Defendant Does Not Make Any More Than A Cursory Attempt To Argue That Job Duties Substantially Differ Between Any Individual Mortgage Underwriters

Defendant does not attempt to make anything more than a cursory argument that mortgage underwriter's job duties vary between individuals, such that conditional certification is inappropriate. In fact, Defendant concedes that all mortgage underwriters' primary duties are to "analyz[e] loan applications to assess (i) whether the risk of providing a loan is acceptable to the lender under the lender's credit policies and (ii) if the loan meets standards for resale on the

11

secondary mortgage market." Opp. Br. at 3 (citing Grich Decl. ¶¶ 4, 11). *See Bollinger*, 761 F. Supp. 2d at 1120 (conditionally certifying class of mortgage underwriters where defendant's own human resources director validated plaintiff's claims to similarity); *Robinson*, 2009 WL 4018560, at *3-4 (conditionally certifying class of mortgage officers where defendant's evidence described the "essential duties" of mortgage officers as being the same notwithstanding purported differences). Defendant does not dispute that Plaintiff and all mortgage underwriters are classified as exempt, or that they are never paid overtime. Defendant has not offered any affidavits from other mortgage underwriters claiming to have been paid overtime, or other evidence contradicting Plaintiff's account.

Instead, Defendant argues that, because each borrower's financial situation is different, "[mortgage] underwriters must exercise significant judgment and discretion in order to make sound decisions regarding the creditworthiness of potential borrowers." Opp. Br. at 4. Plaintiff and Opt-In Plaintiffs stated in their declarations, however, that their duties in analyzing the mortgage applications pursuant to contracting bank guidelines required and permitted no discretion on the part of mortgage underwriters. *See* Savitskie Decl. ¶ 8; Gross Decl. ¶ 8; Harrison Decl. ¶ 8; Mack Decl. ¶ 8; Spivey Decl. ¶ 8. At this first stage, factual disputes cannot be the basis for denying certification. *See, e.g., Camper*, 200 F.R.D. at 520 ("Factual disputes do not negate the appropriateness of court-facilitated notice."); *Calderon*, 2011 WL 98197, at *7 n.1 ("Courts should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated.").

There are no individual variations in mortgage underwriter's job duties to preclude conditional certification and notice at this time.

### D. Defendant Improperly Asserts That Resolution Of Plaintiff's Claim Will Turn On The Third Prong Of the Administrative Exemption

Moreover, although Plaintiff maintains that it is inappropriate to consider the merits of Plaintiff's claims or Defendant's defenses, at this initial stage, an individualized determination of the amount of discretion each mortgage underwriter exerted will not necessarily be required for Plaintiff to prevail and adjudicate his claim on a classwide basis. Defendant asserts that "resolution of Plaintiff's claim will require the Court to determine whether the Plaintiff's duties as a mortgage underwriter included 'the exercise of discretion and independent judgment with respect to matters of significance." Opp. Br. at 13, 16 (citing 29 C.F.R. § 541.200(a)).

In underwriter and loan officer cases, however, the focus is not generally on the exercise of discretion, but rather whether a defendant is able to meet their burden of establishing that mortgage underwriters qualify under the ***second*** prong of the test for the administrative exemption: whether their "primary duty is the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. § 541.200(a). As the Court of Appeals for the Second Circuit recently held, underwriters tasked with approving loans were not exempt under the administrative exemption of the FLSA because their "work is not related either to setting 'management policies' nor to 'general business operations' . . . , but rather concerns the 'production' of loans, the fundamental service provided by the bank." *Davis*, 587 F.3d at 534. Because *bona fide* administrative employees must meet all three criteria to be exempt – 1) be compensated on a salary basis; 2) perform work directly related to management policies or general business operations; and 3) customarily and regularly exercise discretion and independent judgment – the *Davis* court correctly recognized that it "need not address whether

13

[the underwriters] customarily and regularly exercised discretion and independent judgment in its determination." *Id.* at 537.

Unless Defendant can show that its mortgage underwriters' "primary duty" is directly related to such management policies or general business operations, unlike the underwriters in *Davis*, whether individual discretion is a primary duty will not be relevant to the Court's inquiry.[5] Defendant has produced no evidence suggesting that such a question cannot be determined collectively. Although the question as to whether Defendant has appropriately applied an exemption is more properly considered at the decertification stage, there is no reason why the applicability of the administrative exemption would preclude conditional certification and notice to be issued. *See Robinson*, 2009 WL 4018560, at *4 ("[I]ndividual class members and their exemptions may be raised by [defendant's] motion to decertify the class. Defendant's arguments about dissimiliarities and exemptions are more appropriately addressed after 'it is known who the class will consist of and ... some of the factual issues can be fleshed out in discovery.'" (internal citations omitted)); *see also Helmert v. Butterball*, No. 4:08-cv-342, 2009 WL 5066759, at *4 (E.D. Ark. Dec. 15, 2009) ("Even if these differences may affect the plaintiffs' ability to prove liability, the Court does not reach the merits of the parties' claims and defenses at the certification stage."). For these reasons, the Court should conditionally certify the class in order to facilitate notice to Defendant's mortgage underwriters, which will permit them with the opportunity to join this lawsuit and toll the statute of limitations on their FLSA claim.

---

[5] Plaintiff does not concede that mortgage underwriters for Defendant meet the third prong of the administrative exemption, but merely notes that, for purposes of collective adjudication, such a determination may not be necessary.

14

### E. Plaintiff's Proposed Notice Plan To Potential Opt-In Members Is Reasonable and Appropriate

Defendant does not dispute the content of Plaintiff's proposed notice, only the form. Plaintiff requests an order that Defendant provide an electronic database of the names, last known mailing addresses, telephone numbers, dates of work, and social security numbers of all members of the FLSA class (***which can be produced pursuant to a protective order maintaining its confidentiality***).[6] Defendant objects to Plaintiff's request for a posting at Zenta's offices where mortgage underwriters work and for telephone and social security numbers for all mortgage underwriters. Opp. Br. at 20.

The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 169 (1989); *see also Calderon*, 2011 WL 98197, at *7-8 (invoking discretion as recognized by *Sperling* to regulate judicial notice); *Williams*, 2011 WL 52353, at *4-5 (same). The district court's discretion is due to the importance that employees receive "accurate and timely notice concerning the pendency of the collective action, so they can make informed decisions about whether to participate." *Sperling*, 493 U.S. at 170.

Plaintiff requests this information to facilitate notification to current and former employees for whom Defendant may not have up to date employment information. Telephone numbers and unique identifiers are routinely produced in FLSA cases and will assist Plaintiff and the Claims Administrator at providing the best possible notice to all class members. Plaintiff and Opt-In Plaintiffs are former employees of Zenta who worked for relatively brief periods. *See*

---

[6] With regard to Plaintiff's request for social security numbers, Plaintiff's concern is that a unique identifying number be accorded to all members of the FLSA class. Plaintiff would accept an employee identification number or other similar unique identifier to be produced in lieu of social security numbers. In the event the Court grants Plaintiff's motion, Plaintiff is willing to meet and confer with Defendant to submit a proposal regarding unique identifiers to the Court.

15

Savitskie Decl. ¶ 2; Gross Decl. ¶ 2; Harrison Decl. ¶ 2; Mack Decl. ¶ 2; Spivey Decl. ¶ 2. Over the past three years in the statutory period, current and former mortgage underwriters may have moved without providing Zenta with updated contact information. The requested information will insure that as many individuals as possible receive notice. *See Lewis v. The Huntington Nat'l. Bank*, No. 11-cv-58, 2011 U.S. Dist. LEXIS 65068, at *6 (S.D. Ohio Jun. 20, 2011) (holding that, with respect to former mortgage loan officers, "the addresses on file . . . may or may not continue to be accurate, and using a second mode of communication [here, email] will help ensure that all of these potential plaintiffs will receive at least one copy of the [notice]"); *see also Morgan*, 551 F.3d at 1244 (noting that the district court ordered the defendant to produce names, addresses and telephone numbers of class members); *Carden v. Scholastic Book Clubs, Inc.*, No. 2:10-cv-1112, 2011 WL 2680769, at *4 (W.D. Mo. Jul. 8, 2011) (granting plaintiffs' request for class members' name, address, social security number, telephone number and dates of employment); *Lin v. Benihana Nat. Corp.*, No. 10-cv-1355, 2011 WL 2418694, at *13 (S.D.N.Y. Jun. 1, 2011) (granting plaintiffs' request for names, addresses, telephone numbers and dates of employment of class members). The information requested by Plaintiff is reasonably calculated to notify all such persons of the pendency of this lawsuit.

In addition, posting notice in the workplace is also an appropriate measure to ensure that individuals are made aware of their opportunity to Opt-In to the lawsuit. *See, e.g.*, *Malloy v. Richard Fleischman & Assocs. Inc.*, No 09-cv-322, 2009 WL 158979, at *4 (S.D.N.Y. Jun. 3, 2009) (ordering notice be posted "in each workplace where potential collective action members are employed").

### F. Plaintiff's Proposal To Use a Notice Administrator To Facilitate Notice Is Reasonable

Finally, Defendant objects to the use of a notice administrator to facilitate. Defendant argues that Plaintiff has not shown use of the administrator is reasonable or necessary and then posits that Plaintiff must provide legal authority for the use of a notice administrator and details concerning costs. Defendant does not propose an alternate administrator. Rather, Defendant apparently opposes the use of an administrator at all.

Defendant's objection is unfounded because the use of third-party administrators is a matter of routine. *See, e.g.*, *Gilbert v. Citigroup, Inc.*, No. 08-385, 2009 WL 424320, at *6 (N.D. Cal. Feb. 18, 2009) (noting defendant suggested the use of third-party administrator and plaintiff agreed that it was appropriate); *id.* at *6 n.5 (noting defendant's suggestion that plaintiffs use notice administrator plaintiffs had used before); *Gerlach v. Wells Fargo & Co.*, No. 05-cv-585, 2006 WL 824652, at *4 (N.D. Cal. Mar. 28, 2006) ("The [opt-in consent] forms should be returned to a third-party claims administrator."). If Plaintiff's Motion is successful, notice will have to be sent to hundreds of Zenta's current and former employees. Heffler, Radetich & Saitta LLP has significant experience in processing notice in class and collective actions as well as locating current addresses for potential members of collective actions using specialized databases where, as here, many are former employees for whom the defendant may lack a current address. Plaintiff's counsel has routinely used notice administrators in FLSA cases, and has found that the use of such administrators ensures that the opt-in process proceeds smoothly and efficiently.

Moreover, it is inappropriate for Defendant to protest the cost of a notice administrator at this stage of the litigation, as Plaintiff bears the cost of such administration. *See, e.g.*, *Gilbert*, 2009 WL 424320, at *6 ("Plaintiff is responsible for all costs and expenses of the notice administrator.").

### III.    CONCLUSION

Plaintiff and Opt-In Plaintiffs have met their burden of providing a basis to support their claim that they and other mortgage underwriters are similarly situated for purposes of the FLSA and thus conditional certification and judicial notice are warranted. For the reasons set forth above, Plaintiff respectfully requests that their Motion be granted.


Dated: August 3, 2011                                      Respectfully submitted,

BERGER & MONTAGUE, P.C.

s/ Shanon J. Carson
Shanon J. Carson
Sarah R. Schalman-Bergen
1622 Locust Street
Philadelphia, PA  19103
Telephone:  (215) 875-3000
Facsimile:   (215) 875-4613

s/ Tamara Brooks
Tamara Brooks
BROOKS LAW OFFICE
N.C. State Bar No. 24139
6729 Fairview Road
Suite E
Charlotte, NC 28210
Telephone: (704) 365-3873
Facsimile: (704) 365-3876

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(b), and supporting papers,** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> David C. Wright, III
> Douglas M. Jarrell
> Matthew Tillery
> ROBINSON, BRADSHAW & HINSON, P.A.
> dwright@rbh.com
> djarrell@rbh.com

Dated: August 3, 2011

                                                BERGER & MONTAGUE, P.C.

                                                s/ Shanon J. Carson
                                                Shanon J. Carson
                                                1622 Locust Street
                                                Philadelphia, PA 19103
                                                Telephone: (215) 875-3000
                                                Facsimile: (215) 875-4613

                                                *Attorneys for Plaintiff*